UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD M. ADAMSKI,

                                        Plaintiff,

                                                                                                <u>DECISION AND ORDER</u>

                                                                                                03-CV-6508L

                                    V.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                                        Defendant.
_____

## INTRODUCTION

       This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Richard M. Adamski ("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social Security Disability Insurance ("SSDI") or Supplemental Security Income ("SSI") benefits.

       Both the Commissioner and plaintiff have moved for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). For the reasons discussed below, the Commissioner's motion (Dkt. #5) is granted, plaintiff's motion (Dkt. #8) is denied, and this action is dismissed.

**PROCEDURAL BACKGROUND**

Plaintiff was born on December 27, 1952. He has a General Equivalency Diploma and has worked as a construction worker and a commercial painter. (T. 81, 86, 93). Plaintiff has a twenty-year history of back problems and underwent back surgeries in 1974, 1978, and 1995.[1] Plaintiff applied for SSDI and SSI benefits on December 21, 2000, alleging that he had been disabled since July 24, 1998 due to recurrent back problems. (T. 58-60; T.286). These applications were denied initially (T. 26, 28-32, 286) and on reconsideration. (T. 13, 27). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 6, 2003. (T. 287-329). On June 23, 2003, the ALJ found that plaintiff was not disabled. (T. 10-24). The ALJ's decision became the final decision of the Commissioner on August 25, 2003, when the Appeals Council denied plaintiff's request for review. (T. 6-8). This action followed.

**DISCUSSION**

**I.   Definition of Disability**

Under the Social Security Act ("the Act"), a person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering

---

[1] Plaintiff underwent a right L5 discectomy in 1974, a lumbar laminectomy in 1978, and a right L3-4 discectomy in 1995.

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B). To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

> The Second Circuit has described the five-step process as follows:
>
> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II.     The ALJ's Decision

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not engaged in substantial activity since his alleged onset date, July 24, 1998. At step two, the ALJ found that plaintiff had a back disorder and a knee disorder, impairments that were severe within the meaning of the regulations. At step three, the ALJ concluded that neither of plaintiff's impairments, either alone or in combination, met or equaled any of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ next determined that plaintiff retained the residual functional

capacity to perform a limited range of light work, but could not perform any of his past relevant work. Using the Medical-Vocational Guidelines as a framework for decision-making and relying on the testimony of a vocational expert, the ALJ concluded at step five that plaintiff retained the residual functional capacity to perform a significant number of jobs that exist in the national economy, including small products assembly worker. (T. 13-24).

**III.     Standard of Review**

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner. *Veino*, 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review

the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998)("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'")(quoting *Johnson*, 817 F.2d at 986).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's determination that plaintiff is not disabled. Plaintiff, however, contends that the ALJ's decision is based on legal error and is not supported by substantial evidence. Plaintiff claims that the ALJ did not give sufficient weight to the opinions of his treating physician, erred when assessing his residual functional capacity, and erred in discrediting his testimony about his pain and limitations of function. I agree with the Commissioner and find that the ALJ applied the correct legal principles and that her decision is supported by substantial evidence.

**IV.     Opinions of Treating and Examining Physicians**

Plaintiff argues that the ALJ failed to accord controlling weight to the opinions of his treating physician, Dr. William W. Cotanch, that he was "totally disabled." Plaintiff argues that, at the very least, he is entitled to a closed period of disability from approximately July 23, 1998, through March 12, 2001. I disagree.

Under the so-called "treating physician's rule," the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other

substantial evidence. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999); *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). A treating source's statement that a plaintiff "is disabled," however, is not considered a "medical opinion" under the treating physician's rule, and is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."). Nevertheless, in analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (citing *McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)).

I do not believe that this is a case where the ALJ substituted her own opinion for that of Dr. Cotanch or accorded it insufficient weight. Plaintiff references several letters that Dr. Cotanch sent to the Workers' Compensation Board and a compensation insurance carrier in which he reports that plaintiff "remains totally disabled at this time." (T. 181, 183, 184). In context, these letters were sent to provide an assessment of plaintiff's medical condition and to request authorization and coverage from the carrier for medical testing and treatment.[2] In this respect, Dr. Cotanch's reports

---

[2] For instance, in a letter dated July 30, 1998, Dr. Cotanch reports that plaintiff began experiencing sharp, disabling radicular pain in his left leg and numbness in his foot which likely were caused by a recurrence of a previous back problem for which plaintiff received workers' compensation. Dr. Cotanch notes that plaintiff "remains totally disabled at this time" and he requests permission for an emergency lumbar MRI scan. (T. 184). In a follow-up letter dated August 10, 1998, Dr. Cotanch opines that the MRI scan showed degenerative postoperative changes at L3, L4, and L5, but that the scan is "not definitive." He requests permission to order a
(continued...)

from 1998 and 1999 that plaintiff "remains disabled" refer to plaintiff's inability during that particular time to return to his *past relevant work*. It says nothing of plaintiff's ability to perform *other work in the national economy*. Those reports, therefore, are not at odds with the ALJ's conclusion at step five that plaintiff was not disabled. *See O'Dell v. Barnhart*, 332 F.Supp.2d 560, 563 (W.D.N.Y.2004) (treating physician's opinion that plaintiff was "non-employable and totally disabled" given as part of a workers' compensation case referred only to plaintiff's past relevant work, not his ability to do other work).

In any event, plaintiff misinterprets the treating physician's rule, and Dr. Cotanch's statements in these reports are not "binding on the [Commissioner]." (Dkt. #9, p.3). Contrary to plaintiff's argument, treating source opinions on issues reserved for determination by the Commissioner, such as whether plaintiff meets the definition of "disability" under the Act, are not entitled to any significant weight. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e). The ALJ, therefore, did not commit legal error by failing to accord special weight to the statements Dr. Cotanch made in his letters to the Workers' Compensation Board that plaintiff was "disabled."

Moreover, the ALJ did, in fact, accord controlling weight to the opinion of Dr. Cotanch. In finding that plaintiff had the residual functional capacity to perform light work that involved no

---

²(...continued)
lumbar myelography and post-myelogram CT scan. Again, Dr. Cotanch notes that plaintiff "remains totally disabled at this time." (T. 183). In a September 23, 1998, letter, Dr. Cotanch reports to the Workers' Compensation Board that plaintiff still has numbness in his foot, but notes that his leg pain "has eased up a bit but still [is] present." He further reports that the myelogram showed "significant postoperative scar tissue and a possible small disc fragment at L4-5 as well as other degenerative changes and narrowing of the canal." Dr. Cotanch requests authorization for a referral to the pain management center and a course of epidural steroid injections. (T. 181).

repetitive lifting and bending, and lifting no more then ten pounds, the ALJ adopted Dr. Cotanch's March 2001 opinion regarding plaintiff's limitations.[3] (T. 174). The ALJ's residual functional capacity assessment, therefore, is based on a proper application of the treating physician rule and is supported by substantial evidence, including the other medical opinions of record.[4] Although all of the opinions of record are not identical to Dr. Cotanch's March 2001 assessment, it is clear from her decision that the ALJ carefully weighed all of the opinions, and placed greatest significance on those of plaintiff's treating and examining physicians.

## V.     Substantial Evidence Exists That Plaintiff Could Perform Other Work

Plaintiff also challenges the ALJ's conclusion at step five that he retained the residual functional capacity to perform other work that exists in significant numbers in the national economy. Specifically, he contends that the ALJ improperly disregarded his complaints of pain and other disabling impairments, failed to consider his past unsuccessful work attempts, and improperly

---

[3] In March 2001, Dr. Cotanch opined that plaintiff "has a moderate to marked permanent disability regarding his low back. He could work in a light duty situation and avoid repetitive lifting and bending and weight restriction of 10 lb." (T. 174).

[4] The ALJ's residual functional capacity assessment is supported by Dr. Cotanch's earlier opinion in August 1999 that plaintiff could perform light duty work that did not involve repetitive lifting, bending, pushing, or pulling, and did not require him to lift more than twenty pounds. (T. 178). It is also consistent with and supported by: a June 2000 assessment of Dr. Louis Medved, an independent medical examiner, who restricted plaintiff from bending, twisting, stooping, or lifting greater than fifteen pounds (T. 215); the March 2001 opinion of Dr. Ejaz Khan that plaintiff had no limitation in sitting and only a mild limitation in walking, standing for a prolonged period of time, lifting, carrying, and pulling/pushing heavy weights (T. 207); the April 2001 assessment of a state agency medical consultant, who found that plaintiff could sit, stand and/or walk for six hours each (T. 224); and the opinions of Dr. Richard J. DellaPorta, a consultative examining physician who examined plaintiff a number of times for workers' compensation and found, in April 1999 and February 2001, that plaintiff should lift no more than ten pounds, only do occasional bending, and be able to sit and stand at will. (T. 163).

weighed the testimony of the vocational expert. I disagree and find that substantial evidence exists to support the ALJ's finding that plaintiff could perform a limited range of light work and sedentary work. I do not believe the record supports plaintiff's argument that he is totally disabled.

The ALJ found that plaintiff could not perform the full range of light work based on certain exertional and non-exertional limitations.  The ALJ, therefore, employed a vocational expert to testify and to give an opinion about plaintiff's ability to perform his past relevant work and other work in the national economy. *See* Social Security Ruling 83-12, 1983 WL 31253 (S.S.A.). At the hearing, the ALJ asked the vocational expert a number of hypothetical questions involving different levels of limitation of function.  In response to all of the questions, the expert identified several jobs that plaintiff could do, including work as a small products assembler which is unskilled light work (with 513,000 positions nationally and 1,950 regionally), and as an order clerk (which is unskilled sedentary work with 348,000 positions nationally and 280 regionally). (T. 319-22). Based upon this testimony, the ALJ properly concluded that a significant number of jobs existed in the national and regional economy that plaintiff could perform.

I disagree with plaintiff that the ALJ erred in analyzing his credibility.  The ALJ found that plaintiff's testimony that he needed to nap and rest daily was unsupported by the record as being medically necessary.  She also concluded that his complaints of pain and limitation of function to the extent alleged were not supported by the medical record. In so concluding, the ALJ properly considered plaintiff's testimony and weighed it in accordance with various factors, including plaintiff's daily activities, the frequency of pain, the type, dosage, and side effects of medication, and other treatment that relieves pain. (T. 21). *See* 20 C.F.R. §§ 404.1529(c); 416.929(c). It was

reasonable for the ALJ to find that plaintiff's subjective complaints were not entirely credible to the incapacitating extent alleged. (T. 23). It is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir.1984); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A.). Because the ALJ's credibility analysis and factual findings are based on application of the proper legal principles, the Court may not examine the evidence and substitute its own judgment for that of the Commissioner. 42 U.S.C. § 405(g); *Parker v. Harris*, 626 F.2d 225 (1980); *see also Glaze v. Barnhart*, 242 F.Supp.2d 233, 236 (W.D.N.Y.2003); *Crowley v. Barnhart*, 220 F.Supp.2d 176, 181 (W.D.N.Y.2002).[5] Consequently, the fact that the vocational expert testified that no jobs existed that would allow plaintiff to nap for one hour during the day does not require reversal, as the ALJ properly discredited this limitation. I also find that the ALJ properly evaluated plaintiff's unsuccessful work attempts during the relevant time period. *See* 20 C.F.R. §§ 404.1574; 416.974.

Finally, the additional medical evidence submitted by plaintiff to the Court does not require a different result. On February 4, 2004, plaintiff submitted five pages of medical reports from Dr. Cotanch that post-date the ALJ's decision. (Dkt. #4). A court may order the Commissioner to consider additional evidence, but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). Under this standard, the proffered evidence must be material, *i.e.*,

---

[5] Furthermore, the vocational expert testified that, even assuming plaintiff was limited to standing for only ten minutes and sitting for only one-half of an hour, he could still perform a number of other jobs that exist in the national economy. (T.323-24).

relevant to the time period at issue and probative. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.1991). Here, the medical evidence is dated after June 23, 2003, the date of the ALJ's decision and, as such, is not relevant to the time period at issue. In any event, the evidence is not probative Nothing in the reports from Dr. Cotanch indicates that plaintiff had an exertional capacity that was more limited than that found by the ALJ. Nor are his statements inconsistent with the ALJ's finding that plaintiff could perform other work in the national economy.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #5) is granted. Plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied. This action is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 23, 2005.